Jorge **VARGAS**, Plaintiff,

v.

Janet **RENO, et al.,** Defendants.

No. Civ. 97–0924–B (POR).

United States District Court,
S.D. California.

June 18, 1997.

Karla L. Kraus, San Diego, CA, for Plaintiff.

Samuel Bettwy, Special Assistant U.S. Attorney, San Diego, CA, for Defendants.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION; DENYING PETITION FOR A WRIT OF HABEAS CORPUS

BREWSTER, District Judge.

This matter came on for hearing on plaintiff's motion for a preliminary injunction and petition for a writ of habeas corpus. After careful consideration of the moving and opposing papers, the Court hereby DENIES

plaintiff's motion for preliminary injunction and DENIES plaintiff's petition for a writ of habeas corpus.

## I. Introduction

The Immigration and Naturalization Service ("INS") obtained a deportation order against plaintiff Jorge Vargas, and he has initiated this suit to challenge to the validity of the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") as applied to him and to prevent enforcement of the deportation order.

## II. Background

Plaintiff Jorge Vargas ("Vargas") is a 27 year old Mexican citizen. He was born in Mexico on November 18, 1969, and immigrated to the United States when he was one month old. He has been a legal permanent resident since December 20, 1969. Complaint ¶ 4. Vargas' entire family resides in the United States. He speaks both Spanish and English and attended elementary and high school in the United States. Complaint ¶ 8.

In 1991, Vargas was convicted of a felony sale of marijuana. He subsequently was convicted of two misdemeanors, one for possession of drugs and one for being under the influence of drugs. Due to the possession conviction, the INS served Vargas with an order to show cause why he should not be deported. Complaint ¶ 9. Aliens convicted of drug offenses while in the United States become deportable. 8 U.S.C. § 1251(a)(2)(B)(i). Vargas sought a waiver of deportation pursuant to 8 U.S.C. § 1182(c). On September 12, 1995, the INS Immigration Judge ("IJ") granted plaintiff's petition for waiver of deportation pursuant to 8 U.S.C. § 1182(c). The IJ felt that it would be too harsh to deport plaintiff because he has lived here almost all of his life and his entire family lives here. Complaint ¶ 11.

The INS appealed this decision to the Board of Immigration Appeals ("BIA") on September 14, 1995. More than seven months later, on April 24, 1996, the Antiter-

rorism and Effective Death Penalty Act of 1996 was signed into law. The AEDPA amended the provision allowing waiver of deportation to exclude aliens convicted of drug offenses. AEDPA § 440(d) (codified at 8 U.S.C. § 1182(c)). Complaint ¶ 13. Initially, the INS stated that it would not apply these amendments retroactively to aliens who had filed their applications for waiver prior to the enactment of the AEDPA. Complaint ¶ 14. The Attorney General vacated this decision and ordered the INS to apply AEDPA § 440(d) retrospectively to all aliens with pending applications. *See Matter of Soriano,* BIA Int. Dec. No. 3289 (1996); Complaint ¶ 15. Based on this opinion, on March 24, 1997, the BIA reversed the IJ and ordered Vargas deported.[1]

The INS ordered Vargas to surrender himself on May 15, 1997 for immediate deportation. Plaintiff is not currently in custody. On May 13, 1997, Vargas filed suit in this court seeking a declaration that AEDPA § 440(d) cannot be applied retroactively and that § 440(d) violates the equal protection guarantee of the Fifth Amendment. He also seeks to enjoin the INS from deporting him. The government stipulated to a temporary restraining order preventing Vargas' deportation which has remained in effect from May 15 until the hearing on the motion for a preliminary injunction.

## III. Discussion

### A. Standard of Law

■ In the Ninth Circuit, the party moving for preliminary injunctive relief or a temporary restraining order must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) "that serious questions are raised and the balance of hardships tips sharply in its favor." *Hoopa Valley Tribe v. Christie,* 812 F.2d 1097, 1102 (9th Cir.1986); *Apple Computer, Inc. v. Formula International Inc.,* 725 F.2d 521, 523 (9th Cir.1984). As stated by the Ninth Circuit in *Oakland*

---

1. Subsequently, these provisions were rewritten again when the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 was passed on September 30, 1996. Pub.Law 104–208, 110 Stat. 3009. These amendments became effective April 1, 1997, eight days after the BIA denied plaintiff's application for a waiver and unambiguously bar deportees such as Vargas from seeking a waiver of deportation.

*Tribune, Inc. v. Chronicle Pub. Co.,* 762 F.2d 1374, 1376 (9th Cir.1985), "[t]hese two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Oakland Tribune,* 762 F.2d at 1376. Under either formulation, plaintiff must show a significant threat of irreparable injury. *Id.*

### B. Jurisdiction to Challenge Deportation Order

Plaintiff challenges the BIA's deportation order by seeking a writ of habeas corpus under 28 U.S.C. § 2241. Plaintiff could not directly appeal his deportation order because the AEDPA bars such appeals. "Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense ... shall not be subject to review by any court." AEDPA § 440(a); 8 U.S.C. § 1105a(a)(10). The Courts of Appeal previously had jurisdiction to review final deportation orders.

The Ninth Circuit has held that § 440(a) bars direct review of deportation orders. *Duldulao v. INS,* 90 F.3d 396 (9th Cir.1996). In *Duldulao,* plaintiff admitted his deportability based on a firearms conviction, but sought a waiver under 8 U.S.C. § 1182(c). The BIA denied his application and he appealed to the Ninth Circuit after the enactment of the AEDPA. *Id.* at 397–98. The Ninth Circuit noted that Congress has the power to define the jurisdiction of the lower federal courts, and if it chooses to omit jurisdiction over deportation orders, it is free to do so. *Id.* at 400. "[T]he power to expel aliens, being essentially a power of the political branches of government, the legislative and executive, may be exercised entirely through executive officers, with such opportunity for judicial review of their action as Congress may see fit to authorize or permit." *Id.* The court further explained that "[d]eportation is not a criminal proceeding and has never been held to be punishment ... [n]o judicial review is guaranteed by the Constitution." *Id.* The Ninth Circuit concluded that "[s]ince aliens have no constitutional right to judicial review of deportation orders, section 440(a) does not offend due process." *Id.* In a

final footnote, the court left open the issue of whether § 440(a) precludes habeas review of deportation orders. "The availability and scope of collateral habeas review where the 'paramount law of the Constitution' may require judicial intervention was not an issue before us[.]" *Id.* at 400 n. 4;

■ Section 440(a) states that deportation orders "shall not be subject to review by any court." This language appears to prohibit all judicial review, direct as well as collateral. In enacting the AEDPA, Congress may have intended to preclude all forms of judicial review of deportation orders and to commit them to the discretion of the INS. Traditionally, bringing a writ of habeas corpus was a valid way to challenge the validity of a deportation order. *See Flores v. INS,* 524 F.2d 627 (9th Cir.1975). The issue, therefore, is whether Congress can bar deportable aliens from all avenues of judicial relief, including habeas corpus relief. Several circuits have noted that the potential presence of a habeas challenge to deportation orders renders Congress' removal of a direct appeal right acceptable. *See Hincapie–Nieto v. I.N.S.,* 92 F.3d 27, 31 (2nd Cir.1996); *Salazar–Haro,* 95 F.3d at 311.

■ The Supreme Court has stated that "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993). As the Third Circuit noted in *Salazar–Haro,* if a deportee's constitutional rights are at stake, judicial review may not be withdrawn by statute. *Salazar–Haro,* 95 F.3d at 311 (citing *Felker v. Turpin,* —— U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)). Thus, for alleged constitutional violations, there must be a judicial forum in which an alien subject to a deportation order may raise his constitutional claims. Absent such a right, the Attorney General could name aliens at random or even for some invidious reason and deport them with impunity. Aliens have a Fifth Amendment right not to be deported without due process of law, and this can only be guaranteed if there is judicial review of deportees' constitutional claims.

■ Moreover, to disallow habeas review of deportation orders would run afoul of the Suspension Clause of the Constitution. "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const.Art. I, § 9, ¶ 2. Aliens such as Vargas who are subject to imminent deportation, even though they are not yet in physical custody, have standing to bring a petition for a writ of habeas corpus. *Flores,* 524 F.2d 627. Such aliens are faced with sufficient immediacy of action and interference with freedom to support habeas corpus jurisdiction. *Id.* In order to constitutionally suspend the right of these aliens to bring a petition for a writ of habeas corpus, there must be an invasion or rebellion. Clearly, there is currently no invasion or rebellion, so Congress must not have intended to suspend the writ of habeas corpus. Further, 28 U.S.C. § 2241 extends the right to petition for a writ of habeas corpus to resident aliens such as plaintiff who are subject to imminent deportation. Given that there are two conflicting interpretations of the interplay between 28 U.S.C. § 2241 and AEDPA § 440(a), and one of the interpretations would lead to an unconstitutional result, Congress must not have intended that result. Congress must not have intended to suspend the right of aliens in imminent danger of deportation to petition the courts for a writ of habeas corpus.

Six district courts have addressed this issue and all have concluded that the AEDPA has not revoked § 2241 as it applies to aliens held in custody pursuant to an order of deportation. *See Yesil v. Reno,* 958 F.Supp. 828, 836–38, 839 (S.D.N.Y. 1997); *Eltayeb v. Ingham,* 950 F.Supp. 95, 98–99 (S.D.N.Y. 1997); *Veliz v. Caplinger,* No. Civ. A. 96–1508, 1997 WL 61456 at *2 (E.D.La. Feb.12, 1997); *Powell v. Jennifer,* 937 F.Supp. 1245, 1252–53 (E.D.Mich.1996); *Dunkley v. Perryman,* No. 96 C–3570, 1996 WL 464191 at *2–*3 (N.D.Ill. Aug.9, 1996); *Mbiya v. INS,* 930 F.Supp. 609, 612 (N.D.Ga.1996).

The Court finds that § 440 of the AEDPA does not preclude the Court from reviewing plaintiff's constitutional claims upon a petition for a writ of habeas corpus.

**C. Retroactive Application of AEDPA § 440(d)**

AEDPA § 440(d) modified 8 U.S.C. § 1182(c) to provide that the Attorney General no longer has the authority to waive deportation of aliens convicted of certain crimes such as those involving controlled substances. The full text of § 1182(c) now reads:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under § 1181(b) of this title. This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 1251(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1251(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 1251(a)(2)(A)(i) of this title.

8 U.S.C. § 1182(c).

■ Plaintiff was convicted of a crime involving controlled substances which rendered him ineligible for waiver of deportation. The AEDPA was enacted after the IJ had granted plaintiff's request for a waiver, but prior to the BIA's ruling on the INS's appeal. The BIA applied § 440(d) retrospectively and denied plaintiff's request for a waiver of deportation. Plaintiff first argues that it was improper for the BIA to apply this provision retrospectively to pending applications.

■ Absent an explicit effective date in the legislation, an act becomes effective on the date it is signed into law by the President. *United States v. Clizer,* 464 F.2d 121, 123 n. 2 (9th Cir.), *cert. denied,* 409 U.S. 1086, 93 S.Ct. 697, 34 L.Ed.2d 673 (1972);

*United States v. Bafia,* 949 F.2d 1465, 1480 (7th Cir.1991), *cert. denied,* 504 U.S. 928, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992); *see also United States v. Ferryman,* 897 F.2d 584, 588–89 (1st Cir.) (stating general presumption that statutes become effective at the moment they are signed into law), *cert. denied,* 498 U.S. 830, 111 S.Ct. 90, 112 L.Ed.2d 62 (1990). However, this Court must follow *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), to determine whether "a federal statute enacted after the events in suit" applies to an existing case. *Id.* at 280, 114 S.Ct. at 1505.

In *Landgraf* the Supreme Court analyzed the applicability of intervening legislation on a pending case. The *Landgraf* analysis posits two axioms concerning the effect of intervening changes in the law. First, "a court is to apply the law in effect at the time it renders its decision." *Id.* at 264, 114 S.Ct. at 1496 (quotation omitted). Second, "retroactivity is not favored in the law." *Id.* (quotation omitted).

To reconcile the tension between these "two seemingly contradictory statements," the Supreme Court set forth a method to determine the applicability of newly enacted legislation on a pending suit:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect. ....if the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505. "In sum, *Landgraf* mandates that if Congress does not prescribe the scope of a statute, we apply intervening civil legislation to pending cases unless it would operate retro-

actively." *Lennox v. Evans,* 87 F.3d 431, 432 (10th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 746, 136 L.Ed.2d 684 (1997).

Deciding when a statute has an impermissible "retroactive effect" is not a simple or mechanical task. *Landgraf,* 511 U.S. at 268, 114 S.Ct. at 1498. When the new statute changes procedural rules or affects the propriety of prospective relief, application of the new provision to a case filed before the legislation became law does not necessarily amount to retroactive operation of a statute. *Id.* at 272–74, 275 & n. 29, 114 S.Ct. at 1501, 1502 & n. 29. Most importantly, a statute does not operate retroactively merely if it is applied to predating conduct or to a case filed before enactment of the statute. *Id.* at 268–70, 114 S.Ct. at 1499. Something more is required to raise concerns of statutory retroactivity. As specified by the Supreme Court, a statute has an impermissible "retroactive effect" when applied to a case filed prior to passage of the new legislation if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280, 114 S.Ct. at 1505.

The amendments to 8 U.S.C. § 1182(c) provide that aliens who are deportable for having been convicted of a controlled substances offense (8 U.S.C. § 1251(a)(2)(B)) are no longer eligible to apply for a waiver of deportation. AEDPA § 440(d); 8 U.S.C. § 1182(c).

With regard to the first step of the *Landgraf* analysis, Congress has not expressly provided the AEDPA's proper reach. Therefore, the Court must examine whether the statute would operate retroactively to impair vested rights or impose new liabilities or duties on existing conduct. In The *Matter of Soriano,* the Attorney General opined that the AEDPA does not impair a right, increase a liability or impose new duties on criminal aliens because it merely limits the availability of discretionary, prospective relief. BIA Int. Dec. No. 3289 (1996).[2] The government ar-

---

**2.** Plaintiff argues that the Attorney General was acting *ultra vires* in vacating the BIA's decision in *Soriano.* The BIA is a division of the Department of Justice under the control of the Attorney

General. In fact, the BIA may only interpret and enforce the Immigration and Naturalization Act because it has been delegated power from the Attorney General. 8 C.F.R. § 2.1. This provision

gues that the agency's opinion is entitled to great deference, however, this position has been rejected by the Supreme Court. When the issue is one of pure statutory construction, the administrative agency's interpretation of its statute is not entitled to any deference. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 445–48, 107 S.Ct. 1207, 1220–22, 94 L.Ed.2d 434 (1987). Courts are the final arbiters of the meaning of a statute. *Id.*

Although the Attorney General's conclusion is not entitled to deference, she is correct; the statute does not have retroactive effect. First, the statute does not impair any rights Vargas had when he committed the drug offenses for which he was convicted. He did not have a right not to be deported. The decision whether to deport him was discretionary with the Attorney General. Second, the statute does not increase his liability for past conduct. His conduct subjected him to immediate deportation. This potential liability is not altered or increased by the statute. The statute only removes one possible means of avoiding this liability. Finally, the statute does not impose new duties on Vargas for past conduct.

Plaintiff argues that he relied on the existing statutory scheme when he gathered all of his evidence and applied for a § 1182(c) waiver prior to the enactment of § 440(d) of the AEDPA. While this may be true, the test under *Landgraf* is whether he relied on the existing law when he engaged in the conduct for which the consequences have changed under the new law. The conduct at issue in this case is Vargas' drug possession. Plaintiff does not argue that he possessed drugs in reliance on the fact that if he were arrested and convicted, and if the INS initiated deportation proceedings, he might be able to obtain a discretionary waiver of deportation from the Attorney General. Further, he cannot make this argument because the waiver, even as it existed pre-AEDPA, is purely discretionary with the Attorney General. The fact that he may have gathered evidence and filed an application for waiver in reliance on the old law is irrelevant to the *Landgraf* analysis.[3]

Vargas' conduct subjected him to immediate deportation. The AEDPA did not alter this fact. It merely eliminated one means of avoiding deportation. Since the statute does not have retroactive effect, it can be applied retrospectively to cases pending before the BIA when it was enacted. For this reason, the BIA properly applied AEDPA § 440(d) to plaintiff

### D. Equal Protection Clause Analysis

 Plaintiff next argues that AEDPA § 440(d) as applied to Legal Permanent Residents ("LPR") who are deportable under 8 U.S.C. § 1251(a)(2)(B) violates the equal protection component of the due process clause of the Fifth Amendment.

In order to understand this argument, it is necessary to take a closer look at the Immigration and Naturalization Act, 8 U.S.C. § 1103 *et seq.* There are two broad categories of aliens who are not permitted to reside in the United States—deportable aliens and

---

specifically states that the delegation of power to the BIA does not in any way diminish the Attorney General's power. 8 C.F.R. § 2.1. Moreover, the Attorney General has power to review decisions of the BIA and affirm or reverse them as she sees fit. 8 C.F.R. § 3.1(h).

Plaintiff next argues that if the Attorney General has the power to make decisions like *Soriano*, then § 440(d) violates separation of powers by allowing her to be both law maker and law enforcer. This argument is without merit. First, the Attorney General was not making law in *Soriano*, she was merely interpreting a law passed by Congress, § 440(d) of the AEDPA. Agencies must be able to interpret their own organic statutes in order to be able to function. Second, her decision may represent the agency interpretation, but it is not the final decision as long as there is some means of judicial review.

As explained above, although there is no direct right of appeal from deportation orders, aliens in imminent danger of being deported may petition the courts for a writ of habeas corpus. In the context of deciding whether such a writ should be granted, courts may decide the issue of whether AEDPA § 440(d) may be applied retrospectively to applications pending when the AEDPA was enacted. This Court has done just that and finds that retrospective application of § 440(d) does not have retroactive effect. Thus, plaintiff has obtained judicial review of the Attorney General's decision in *Soriano*, and the Court finds that the decision is correct.

3. Since § 1182(c) was amended by an act of Congress, the defenses of equitable estoppel, laches and common law reliance do not apply.

excludable aliens. Deportable aliens are those that reside in the United States, but whom the Attorney General may deport for various reasons. Excludable aliens are those who seek to enter the United States to set up residence, and whom the Attorney General has the power to exclude. Title 8 U.S.C. § 1182(a) defines excludable aliens and provides that they can be denied entry into the United States. Title 8 U.S.C. § 1182(c) provides the Attorney General with discretion not to apply subsection (a) to aliens who are legal permanent residents who have left the United States for a short period of time and seek re-entry. Case law has held that in order not to violate the equal protection guarantee, this section must also be applied to aliens who are legal permanent resident aliens and who have not left the United States for a short period of time. *See Francis v. Immigration and Naturalization Service*, 532 F.2d 268 (2nd Cir.1976).

Title 8 U.S.C. § 1251(a) defines deportable aliens and provides that they must be deported. The definition of deportable alien includes all classes of excludable aliens, and also includes classes of aliens who commit crimes, falsify documents, or present a security risk while in the United States. The amendments to § 1182(c) state that the Attorney General cannot grant a waiver to an alien who is deportable for having committed a criminal offense covered in § 1251(a)(2). The plain language of this provision applies both to aliens who have never left the United States, and to aliens who have left for a short period of time. The only difference is that if an alien remains in the United States and the Attorney General seeks to deport him, she commences deportation proceedings, whereas if an alien leaves for a short period and seeks to return, he is placed in exclusion proceedings. At first, Immigration Judges applied § 1182(c) to bar both groups of aliens from seeking deportation waivers. The BIA then decided *In re Samuel Fuentes–Campos,* in which it concluded that a legal permanent resident alien who is in exclusion proceedings after leaving the United States can still seek a § 1182(c) waiver. Interim Decision # 3318 (May 14, 1997). When the AEDPA amended § 1182(c), it added the language "[t]his subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in . . . ." The BIA determined that the use of the word "deportable" means that the restrictions on § 1182(c) waivers are limited to aliens in deportation proceedings. Samuel Fuentes–Campos was a legal permanent resident who had entered Mexico for a short period of time and was attempting to re-enter the United States. Since he was in exclusion proceedings rather than deportation proceedings, the BIA found him eligible for a § 1182(c) waiver.

A close reading of the statute demonstrates the absurdity of the BIA's interpretation. Subsection 1182(c) begins "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily, . . ., and who are returning to a lawful unrelinquished domicile[.]" This subsection only refers to the class of aliens who are legal permanent residents who have proceeded abroad for a short period of time. Nowhere does the statute refer to aliens who have never left the United States. Although section 1182(c) does not refer to deportable aliens who have not left the country, it has been applied to them because of equal protection concerns. The BIA's application of the § 1182(c) amendments to deportable LPR aliens and not excludable LPR aliens is ironic because deportable LPR aliens were never statutorily included under § 1182(c) while excludable LPR aliens were.

■ The statute goes on to provide that aliens who have left temporarily "may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a)[.]" Subsection (a) deals with the grounds for excluding an alien who seeks entry into the United States. The statute then states that it "does not apply to an alien who is deportable by reason of having committed any criminal offense covered by section 1251(a)(2)(A)(ii), (B), (C), or (D) of this title[.]" Section 1251 governs the deportability of legal permanent resident aliens. When read together, the clear intent of these provisions is to treat legal permanent aliens who have left briefly as if they had never left. They are to be treated like aliens residing continuously in the United States rather than

**1546**

like aliens who have never been admitted to the United States and seek to enter. Since they are to be treated like aliens residing in the U.S., the INS is to analyze whether they meet the deportability sections of the statute rather than the excludability sections of the statute. Whether the INS calls the proceeding an exclusion proceeding or a deportation proceeding is irrelevant.[4] Congress has clearly stated that legal permanent resident aliens who reside in the United States and who have gone abroad temporarily cannot receive a waiver if they committed an offense which renders them deportable. When the statute is clear, the Court must enforce it as written. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Further, to give force to the BIA's strained interpretation leads to the absurd result that legal permanent resident aliens who have always resided in the U.S. cannot seek a waiver while an alien who visited relatives in Mexico for the weekend can seek a waiver. It is this disparate treatment of similarly situated individuals that plaintiff challenges as a violation of equal protection.

Courts were confronted with a similar situation two decades ago when the BIA interpreted § 1182(c) to allow aliens who had gone abroad briefly to apply for waivers, but did not allow aliens who had never left to apply for waivers. *Francis v. INS,* 532 F.2d 268 (2nd Cir.1976). The BIA interpreted § 1182(c) literally to apply only to legal permanent resident aliens who had left the U.S. for a short period of time and sought re-entry. *Francis* argued that "the statute as so applied creates two classes of aliens identical in every respect except for the fact that members of one class have departed and returned to this country at some point after they become deportable." *Id.* at 272. The Second Circuit noted that the equal protection guarantee applies to aliens, but that a classification based on alienage is not a suspect classification, so is only entitled to rational basis review. *Id.*

Under this test, distinctions between different classes of individuals

must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.

*Stanton v. Stanton,* 421 U.S. 7, 14, 95 S.Ct. 1373, 1377, 43 L.Ed.2d 688 (1975). Applying this standard, the court found that

The government has failed to suggest any reason why this petitioner's failure to travel abroad following his conviction should be a crucial factor in determining whether he may be permitted to remain in this country. Reason and fairness would suggest that an alien whose ties with this country are so strong that he has never departed after his initial entry should receive at least as much consideration as an individual who may leave and return from time to time.

*Francis,* 532 F.2d at 273. The Second Circuit held the statute unconstitutional as applied to petitioner. *Id.* The Ninth Circuit adopted the *Francis* rationale and held the same provision unconstitutional in *Tapia–Acuna v. INS,* 640 F.2d 223, 225 (9th Cir. 1981) ("we hold that eligibility for § 1182(c) relief cannot constitutionally be denied to an otherwise eligible alien ... whether or not the alien has departed from and returned to the United States").

In the instant case, the BIA's decision in *Fuentes–Campos* again draws an arbitrary distinction between LPR aliens who have left the U.S. briefly and those who have always remained here. The BIA dismissed this argument in *Fuentes–Campos* by stating that the distinguishing factor is that aliens who have left the U.S. are in exclusion proceedings while aliens who have always remained here are in deportation proceedings. This is irrelevant. It does not respond to the arbitrariness of allowing LPR aliens who have left the U.S. for a short time to file for a waiver, while not allowing LPR aliens who have remained in the U.S. the same option.

4. In fact, under the newly enacted Immigration statute, both types of proceedings have been consolidated into "removal" proceedings. See Pub. Law 104–208; IRRAIRA § 304(a)7; 110 Stat. 1633–50.

The fact that the proceedings have different names does not affect the fact that two similarly situated LPR aliens are receiving disparate treatment.

■ The government next argues that the denial of § 1182(c) waivers applies only to LPR aliens who are currently in deportation hearings. The Court fails to see how this is possible. The government cites 8 C.F.R. § 212.3 which governs applications for waiver under 8 U.S.C. § 1182(c). The Court has reviewed this provision and finds no place in which it states that LPR aliens can apply for § 1182(c) relief at any time they are not in deportation proceedings. Furthermore, even if an alien is not currently in deportation proceedings, § 1182(c) would require the summary denial of his application for waiver if he is ineligible by reason of having committed a crime specified in § 1251(a)(2). It does not matter if an alien applies for a waiver prior to or during a deportation hearing. If he is ineligible for waiver under the amendments to § 1182(c), then he is ineligible regardless of when he seeks waiver.

Finally, the government argues that the "windfall" effect of permitting LPRs in exclusion proceedings to apply for § 1182(c) waivers while resident LPR's cannot is necessary to maintain the INS's authority to adjudicate § 1182(c) applications. This simply cannot be true. The amendments to § 1182(c) prohibit certain classes of LPR aliens from seeking § 1182(c) waivers, namely those who are deportable for committing certain crimes listed in § 1251(a)(2). There are other valid reasons for deportation for which deportees can still seek a waiver. See e.g., 8 U.S.C. §§ 1251(a)(1)(A), (B), (C), (D), (E), (F) & (G); § 1251(a)(2)(A)(iv); § 1251(a)(2)(E); § 1251(a)(3). The INS must still adjudicate applications for waiver on these grounds. There is no necessity that INS still adjudicate applications based on the specific grounds prohibited in § 1182(c). Further, the government fails to explain why it must maintain its authority to adjudicate § 1182(c) applications. Congress could decide to eliminate § 1182(c) entirely if it so desired.

By redrawing the arbitrary line that was held unconstitutional in *Francis* and *Tapia–*

*Acuna,* the BIA again runs afoul of the equal protection guarantee of the Fifth Amendment. Similarly situated LPR aliens receive disparate treatment depending on whether or not they have spent a short time abroad. The government has failed to proffer any legitimate government interest in drawing a distinction between these two classes of aliens. Accordingly, drawing such a distinction is a denial of equal protection of the laws.

■ This distinction is not in the statute itself. The statute is written in neutral terms. It is the application of the statute as evidenced by the BIA's decision in *Fuentes–Campos* which violates equal protection. The BIA is applying the amendments to § 1182(c) to resident aliens while not applying the amendments to identically situated aliens who have recently spent a short time abroad. Discriminatory enforcement of a facially neutral statute can be a violation of the equal protection guarantee. See *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886) ("Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution.").

■ The remedy, however, is not to allow aliens who have always resided in the United States to seek § 1182(c) waivers. Rather, the solution would be to apply the § 1182(c) ineligibility for waivers to LPR aliens who have left the U.S. briefly and are in exclusion proceedings. As explained above, the clear meaning of § 1182(c) is that LPR aliens who have left the U.S. for a short time and seek to return are ineligible for a waiver if they are deportable by reason of having committed a crime listed in § 1251(a)(2). The statute should be enforced as written rather than given the strained interpretation advanced by the BIA in *Fuentes-Ocampo.* The § 1182(c) bar on granting waivers to LPR aliens who are deportable by reason of having committed a criminal offense listed in

§ 1251(a)(2) should be applied to all LPR aliens, regardless of whether they have spent a short time abroad.

The problem with enjoining the BIA's enforcement of the *Fuentes–Campos* interpretation of § 1182(c) is that § 1182(c) was amended again September 30, 1996. These amendments took effect April 1, 1997, eight days after the BIA rendered its decision in this case. The amendments in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA"), Pub.Law. 104–208, 110 Stat. 3009, unambiguously bar § 1182(c) relief to criminal LPRs in both exclusion and deportation proceedings.[5] Thus, if the Court were to enjoin BIA and INS from granting waivers to aliens who have briefly left the U.S., it would only affect BIA and INS final decisions which were rendered between April 24, 1996 and April 1, 1997. These are the dates during which AEDPA § 440(d) was in effect. Given that these decisions have already become final, the Court would not retroactively overturn these decisions and order these aliens deported. To do otherwise would be unreasonable and would greatly disrupt the settled expectations of all parties involved.

As of April 1, 1997, the IRAIRA is in effect and BIA is no longer unconstitutionally enforcing § 1182(c). Thus, at most the Court has evidence of a past, but not present or ongoing constitutional violation. The Court cannot grant plaintiff the relief he seeks. It would violate the clear intent of Congress to grant a waiver to an individual who is statutorily ineligible. Moreover, the Court cannot enjoin the BIA's flawed interpretation and application of § 1182(c) because this section no longer exists. Plaintiff has established a past constitutional violation which has been remedied. Since there is no ongoing constitutional violation, there is nothing for the Court to enjoin. Accordingly, plaintiff's motion for a preliminary injunction is DENIED, and his petition for a writ of habeas corpus is DENIED.

**E. Irreparable Harm**

 Plaintiff argues that if he is deported to Mexico, he will suffer irreparable harm. Vargas has lived practically his entire life in the United States and his family resides here. Other than the first month of his life, he has never resided in Mexico. Vargas admits that he had a drug problem, but claims that he has been rehabilitated and no longer uses drugs.

Vargas is also the only adult male in his family and assists other family members, especially his sister Sonia who is disabled as a result of an automobile accident in 1990. Sonia has a son, Giovanni, whom Vargas helps raise. Vargas also provides his mother with money and assists her with household chores. Not only will his deportation harm him, but it will harm his family members who remain in the United States. If he is deported, he will probably never be allowed to return to the United States, even to visit. An aggravated felon may not return to the United States for twenty years.

The Immigration Judge who presided at Vargas' hearing found that:

> considering the outstanding equities which the Petitioner has been able to establish, it has been determined that granting relief is warranted and in the best interest of this county. In reaching this conclusion, weighing the Petitioner's equities which are remarkable and unique against the serious adverse factors present in his case and a determination that he had demonstrated genuine efforts of rehabilitation, the Petitioner's deportation will simply be too harsh.

IJ Decision, p. 9. The IJ is correct that deporting Vargas will harm both plaintiff and his family.

This harm is mitigated somewhat by the fact that plaintiff could have sought United States citizenship at any point during the 27 years which he has lived in the United States. Had he become a United States citizen, he would not be subject to deportation for his drug conviction. Vargas never

---

5. IRRAIRA § 304(b) specifically repeals 8 U.S.C. § 1182(c). This provision has been replaced by discretionary waiver·provisions within the sec-

tions relating to specific offenses for which waivers may still be granted. *See* 110 Stat. 1600–1700.

availed himself of this opportunity, instead, he has made a decision to retain his Mexican citizenship. Moreover, plaintiff is a high school graduate who is fluent in both Spanish and English. Although he will be separated from his family, he has made no showing that he will be unable to find a job or lead a productive life in Mexico.

## IV. Conclusion

First, the Court finds that despite the enactment of AEDPA § 440(a), the Court still has jurisdiction to adjudicate plaintiff's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. Second, the Court finds that AEDPA § 440(d) does not have retroactive effects, so it must be applied, starting on the date of its enactment, to all applications for waiver pending before the INS and BIA. Thus, the BIA properly applied AEDPA § 440(d) to plaintiff's application.

The Court then must examine plaintiff's claim that as applied to him, 8 U.S.C. § 1182(c) violates the equal protection guarantee of the Fifth Amendment. In the context of a motion for a preliminary injunction, the Court must weigh plaintiff's likelihood of success on this claim against the irreparable harm to plaintiff if an injunction is not granted. Although the harm from deporting Vargas appears to be substantial, he has no probability of success on the merits. Even if the Court agrees with his equal protection argument, the Court could not grant him the relief he seeks. The Court cannot grant him a waiver of deportation in contravention of the clear language of the statute. Congress has decided that LPR aliens like Vargas who commit drug offenses must be deported. Congress has taken away the Attorney General's discretion not to deport such individuals. This Court has no choice but to enforce the statute as written by Congress. Plaintiff must seek relief from Congress, possibly in the form of a private bill, rather than the courts.

Moreover, even if there was a prior violation of the equal protection guarantee, it is no longer an ongoing violation because § 1182(c) has been repealed. The newly enacted provisions unambiguously bar both classes of aliens from seeking waivers, so there is no danger of the *Fuentes–Campos* equal protection error being repeated in the future. In the absence of an ongoing constitutional violation, there is nothing for the Court to enjoin.

For these reasons, the Court hereby DENIES plaintiff's motion for a preliminary injunction and DENIES plaintiff's petition for a writ of habeas corpus.

IT IS SO ORDERED.