**Efrain GUTIERREZ–MARTINEZ,
Petitioner,**

**v.**

**Janet RENO, Attorney General of the United States; Doris Meissner, Commissioner of Immigration and Naturalization; Thomas P. Fischer, Atlanta District Director, Immigration and Naturalization Service; and the Immigration and Naturalization Service, Respondents.**

**Civil Action No. 1:97–cv–3361–TWT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 8, 1998.

Robert Henry Beer, Marietta, GA, for Efrain Gutierrez–Martinez.

Lori M. Beranek, Atlanta, GA, for Janet Reno, Doris Meissner, Thomas P. Fischer, Immigration and Naturalization Service.

### ORDER

THRASH, District Judge.

This matter is before the court on Efrain Gutierrez–Martinez' Petition for a Writ of Habeas Corpus and Request to Stay Deportation [Doc. No. 1]. After conducting a hearing on December 11, 1997, and carefully considering the arguments presented by the parties, the Court will deny the Petition and Request for Stay for the reasons set forth below.

## I. BACKGROUND

The Petitioner is a native and citizen of Colombia admitted to the United States as a lawful, permanent resident on or about January 30, 1986. On September 29, 1988, the Petitioner pled guilty to and was convicted of one count of conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. § 846. On October 15, 1995, Respondent Immigration and Naturalization Service ("INS") ordered the Petitioner to show cause why he should not be deported on the basis of his conviction for possession of a controlled substance in violation of § 241(a)(2)(B)(i) of the Immigration and Naturalization Act ("INA") (codified at 8 U.S.C. § 1251(a)(2)(B)(i)). At a hearing conducted before the Immigration Judge on March 26, 1996, the Petitioner admitted the factual allegations of his controlled substance conviction. The Immigration Judge found the Petitioner deportable because of his status as a convicted drug offender. The Immigration Judge then granted the Petitioner additional time to file an application for waiver of deportation under § 212(c) (codified at 8 U.S.C. § 1182(c)).

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996). Section 440(d) of the AEDPA amended § 212(c) and eliminated the discretionary authority to waive the deportation of aliens who were convicted of certain crimes, including the crime committed by the Petitioner. The Petitioner filed his application for a § 212(c) waiver on April 26, 1996. At a hearing conducted on May 14, 1996, the Immigration Judge found, pursuant to § 440(d), that the Petitioner was statutorily ineligible for § 212(c) relief. The Petitioner then appealed to the Board of Immigration Appeals ("BIA"). Citing § 440(d), the BIA likewise determined, by order dated March 25, 1997, that the Petitioner was statutorily ineligible for § 212(c) relief and dismissed his appeal. The Petitioner then filed a petition for review of the BIA's order with the Eleventh Circuit. That court dismissed his petition for lack of jurisdiction.

On November 6, 1997, the Petitioner filed the present habeas corpus petition and request for stay of deportation against (1) Janet Reno, the Attorney General of the United States; (2) Doris Meissner, INS Commissioner; (3) Thomas P. Fischer, INS Atlanta District Director; and (4) the INS. The Petitioner first asserts that this Court has jurisdiction to issue a writ of habeas corpus under 28 U.S.C. § 2241 despite the recent passage of the AEDPA. The Petitioner then asserts that § 440(d) of AEDPA (1) cannot be applied retroactively; and (2) violates the equal protection guarantee of the Fifth Amendment. He seeks to enjoin the Defendants from deporting him and to remand this case to the BIA for consideration of his § 212(c) application on the merits. In response, the Respondents contend that (1) this Court lacks jurisdiction to consider this habeas corpus petition; (2) the Immigration Judge and BIA properly applied § 440(d) in denying a waiver from deportation; and (3) § 440(d) as applied does not violate the equal protection guarantee of the Fifth Amendment.

## II. DISCUSSION

*A. Jurisdiction under 28 U.S.C. § 2241*

This Court must first determine whether it has jurisdiction to consider this

habeas corpus petition. Before the enactment of the AEDPA, § 106(a)(10) of the INA (formerly codified at 8 U.S.C. § 1105a(a)(10)), provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." However, § 401(e) and (f) of the AEDPA struck this language, and § 440(a) of AEDPA replaced it with the following:

> Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(i), shall not be subject to review by any court.

8 U.S.C. § 1105a(a)(10) (as amended by § 440(a) of the AEDPA). Because § 440 does not contain an effective date provision applicable to § 440(a), that section became effective on the date that the AEDPA was signed by President Clinton, April 24, 1996. *See Boston–Bollers v. INS*, 106 F.3d 352, 354 (11th Cir.1997).

Subsequently, on September 30, 1996, President Clinton signed into law the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), which further amended the INA. Section 306 of the IIRIRA restructured judicial review of deportation orders; which were renamed "orders of removal." While § 306(b) repealed former § 106 in its entirety, § 306(a) revised § 242 (codified at 8 U.S.C. § 1252) of the INA to provide as follows:

> EXCLUSIVE JURISDICTION. Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g) (as amended by IIRIRA § 306(a)). Section 306(a) also provides that judicial review of orders of removal can only be initiated in a Court of Appeals. 8 U.S.C. § 1252(b)(2). Further, § 306(a)(2) carried through the judicial review bar of § 440(a) of

the AEDPA. 8 U.S.C. § 1252(a)(2). Finally, Section 306(c)(1) provides that newly revised § 242 applies to all "claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act." *See* 8 U.S.C. § 1252. Section 306 became effective on April 1, 1997. *See Auguste v. Attorney General*, 118 F.3d 723, 725 (11th Cir.1997).

Section 440(a) of the AEDPA and § 306(a)(2) of IIRIRA clearly bar direct review "by any court" of a deportation order against an alien who has been found deportable of certain enumerated crimes including the crime committed by the Petitioner. However, despite the sweeping language contained in these statutes, the question remains whether the district courts retain habeas corpus jurisdiction under 28 U.S.C. § 2241. Section 2241 provides that any person detained unlawfully may seek a writ of habeas corpus in the federal district courts if, *inter alia*, (1) he is in custody under or by color of the authority of the United States; or (2) he is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or (3) he is in custody "in violation of the Constitution or laws or treaties of the United States...." Before the passage of the AEDPA and the IIRIRA, the Eleventh Circuit explicitly recognized that "challenges to deportation proceedings are cognizable under 28 U.S.C. § 2241." *Orozco v. United States*, 911 F.2d 539, 540 (11th Cir.1990).

An overwhelming majority of district courts have concluded that neither the AEDPA nor the IIRIRA have repealed § 2241 as it applies to aliens held in custody pursuant to an order of deportation. *See e.g. Vargas v. Reno*, 966 F.Supp. 1537, 1541–42 (S.D.Cal. 1997); *Ozoanya v. Reno*, 968 F.Supp. 1, 5–7 (D.D.C.1997); *Powell v. Jennifer*, 937 F.Supp. 1245, 1252–53 (E.D.Mich.1996); *Mbiya v. I.N.S.*, 930 F.Supp. 609, 612 (N.D.Ga.1996); *but see Mayers v. Reno*, 977 F.Supp. 1457 (S.D.Fla.1997) (court determined that § 306(a) and § 440(a), when read together, evidence Congressional intent to repeal habeas corpus review). This Court agrees with the majority in concluding that

§ 2241 preserves the writ of habeas corpus for aliens subject to deportation, such as the Petitioner.

The federal courts have retained the statutory authority to grant writs of habeas corpus since enactment of the Judiciary Act of 1789. In *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), the Supreme Court held that repeal of habeas corpus jurisdiction by implication is not favored. *Id.* at 518 U.S. at –– ––, 116 S.Ct. at 2338–40. In *Felker,* the Supreme Court considered whether the AEDPA repealed its authority to hear habeas petitions filed as original matters. While noting that § 103 of the AEDPA clearly and affirmatively eliminated the jurisdiction of the Courts of Appeals to consider original habeas corpus petitions, the Supreme Court declined to find a repeal of § 2241 by implication as to its original habeas corpus jurisdiction. *Id.* at 518 U.S. at ––, 116 S.Ct. at 2339.

Here, neither the AEDPA nor the IIRIRA affirmatively and clearly eliminated the district court's jurisdiction under § 2241 to consider habeas corpus petitions filed by a certain class of persons in custody. Accordingly, the uncertain language of these statutes does not eliminate by implication the recognized jurisdiction of the district courts under § 2241 to consider habeas corpus claims of any person in custody, including deportable aliens. *See Felker,* 518 U.S. at –– –– ––, 116 S.Ct. at 2339–40; *Ozoanya,* 968 F.Supp. at 6–7. Moreover, to disallow habeas review of deportation orders conceivably could run afoul of the Suspension Clause of the Constitution. "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public safety may require it." U.S. Const. Art: I, § 9, ¶ 2. Clearly, there is currently no invasion or rebellion, and the Court will not preclude consideration of the Petitioner's habeas petition absent an affirmative and clear expression from Congress.

■ While the Court has jurisdiction to review the Petitioner's habeas claims, such review is limited in scope. In the context of habeas review of orders of deportation, the Supreme Court has stated that its function "has always been limited to the enforcement of due process requirements. To review those requirements under the Constitution, whatever the intermediate formulation of their constituents, is very different from applying a statutory standard of review, e.g. deciding on 'the whole record.'" *Heikkila v. Barber,* 345 U.S. 229, 235, 73 S.Ct. 603, 606, 97 L.Ed. 972 (1953). The Court concludes, therefore, that habeas relief is available only if the Petitioner can identify a grave constitutional error or a fundamental miscarriage of justice in his deportation proceedings. *See Powell,* 937 F.Supp. at 1252–53; *Mbiya,* 930 F.Supp. at 612. "This accommodation preserves the balance between the Suspension Clause and Congress' plenary authority to control immigration." *Mbiya,* 930 F.Supp. at 612.

■ Before considering the Petitioner's habeas claims, the Court will first determine whether the Petitioner satisfies the "in custody" requirement of § 2241. In connection with his habeas petition, the Petitioner stated that he was taken into custody by INS agents on October 16, 1995, one day after the INS ordered the Petitioner to show cause why he should not be deported on the basis of his conviction of a controlled substance violation. The Petitioner further stated that he was held in custody for five days and released on bond on October 21, 1995. A party released on bond following commencement of actual, physical custody in connection with a deportation proceeding satisfies the "in custody" requirement. *See U.S. ex rel. Marcello v. District Director of the Immigration and Naturalization Service, New Orleans,* 634 F.2d 964, 969–71 (5th Cir.1981); *Mbiya,* 930 F.Supp. at 612–13. Accordingly, the Court finds that the Petitioner was "in custody" for purposes of § 2241.

### B. Retroactivity

Section 440(d) of the AEDPA amended § 212(c) to provide that the Attorney General no longer has the authority to waive deportation of aliens convicted of certain crimes such as the crime committed by the Petitioner. As noted above, this amendment became effective on April 24, 1996. The Petitioner contends that § 440(d), as applied to him, is

unconstitutionally retroactive and that he should be allowed to have a hearing on the merits to consider his § 212(c) application. The record reflects that the Petitioner first requested a § 212(c) waiver at the March 26, 1996, deportation hearing, but that he did not file his § 212(c) application until April 26, 1996, two days after the AEDPA became effective. Thus, the Petitioner's retroactivity issue may be foreclosed by the formal filing of the application after the AEDPA became effective. Nevertheless, even if the § 212(c) application was deemed pending before the effective date for the AEDPA, the BIA properly applied § 440(d).

In *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court analyzed the applicability of intervening legislation on a pending case. The first step of this analysis is to determine whether Congress has expressly prescribed the statute's proper reach. *Id.* at 280, 114 S.Ct. at 1505. When the statute contains no such express command, the next step is to determine whether the new statute would have retroactive effect, recognizing the traditional presumption that retroactivity is not favored in the law absent clear congressional intent. *Id.* A statute has an impermissible "retroactive effect" when applied to a case before the passage of new legislation if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* However, when the new statute changes procedural rules or affects the propriety of prospective relief, the application of the new legislation to cases filed before the legislation became effective does not necessarily amount to retroactive operation of the statute. *Id.* at 272–75, 114 S.Ct. at 1501–02. Further, a statute does not operate retroactively merely if it is applied to a case filed before enactment of the statute. *Id.* at 268–70, 114 S.Ct. at 1499.

In this case, the Congress has not expressly provided for the AEDPA's proper reach. Thus, it is necessary to inquire whether the statute would operate retroactively to impair vested rights or impose new liabilities or duties on existing conduct. In

*The Matter of Soriano,* Int.Dec. 3289 (B.I.A. Att'y Gen. Feb. 21, 1997), the Attorney General vacated a BIA order and concluded that § 440(d) of the AEDPA does not impair a right, increase a liability, or impose new limits on criminal aliens because it merely limits the availability of discretionary, prospective relief. The Court agrees that § 440(d) does not have retroactive effect and can be applied to deportation cases pending when it was enacted. The statute does not impair any rights that the Petitioner had when he committed his drug offense and does not increase his liability for past conduct. While the Petitioner's conduct subjected him to immediate deportation, this potential liability is not altered or increased by the statute. Rather, § 440(d) merely removes one potential means of avoiding immediate deportation. Finally, § 440(d) does not impose new duties on the Petitioner for past conduct. *See Vargas,* 966 F.Supp. at 1543–44. Because the BIA properly applied § 440(d), the Petitioner has failed to establish a grave constitutional error or fundamental miscarriage of justice entitling him to habeas relief as to this claim.

## C. Equal Protection

The Petitioner contends that § 440(d), as applied to deportable aliens, violates the equal protection guarantee of the Due Process Clause of the Fifth Amendment. His claim relies on a distinction in the INA between two categories of aliens who are not permitted to reside in the United States, deportable and excludable aliens. Deportable aliens are those who reside in the United States, but whom the Attorney General may deport for various reasons, including the commission of certain crimes. 8 U.S.C. § 1251(a). Excludable aliens are those who may be denied entrance into the United States. 8 U.S.C. § 1182(a).

Before the passage of AEDPA, § 212(c) provided that excludable aliens who were legal permanent residents for seven years, and proceeded abroad only temporarily, may be admitted at the discretion of the Attorney General. On its face, § 212(c) applied only to exclusion proceedings and not to deportation proceedings. The Second Circuit held that in order to satisfy equal protection re-

quirements, § 212(c) relief must be available for aliens that were legal, permanent residents for seven years, regardless of whether they are in deportation proceedings or exclusion proceedings. *Francis v. INS*, 532 F.2d 268, 269 (2d Cir.1976). This rule has been universally accepted by the Courts of Appeals.

When § 440(d) of the AEDPA amended § 212(c), it added the language that "[t]his subsection shall not apply to an alien who is deportable by reason of having committed a criminal offense" including the crime committed by the Petitioner. In a decision dated May 14, 1997, the BIA determined that the use of the word "deportable" means that the restrictions on § 212(c) waivers are limited to aliens in deportation proceedings, and does apply to aliens in exclusion proceedings. *See In re Fuentes–Campos*, BIA Int.Dec. 3318 (1997). In that case, Fuentos–Campos was a legal permanent resident who had entered Mexico for a short time and was attempting to re-enter the United States. Because he was in exclusion proceedings, the BIA found him eligible for a § 212(c) waiver. It is this arbitrary distinction between aliens in deportation proceedings versus aliens in exclusion proceedings that the Petitioner claims is a violation of equal protection.

Nevertheless, § 304(b) of the IIRIRA specifically repealed § 212(c). Further, IIRIRA § 304(a) consolidated deportation and exclusion proceedings into a single category of removal proceeding, thus eliminating the distinction that previously implicated equal protection concerns. As of April 1, 1997, the effective date of the IIRIRA, the BIA is no longer unconstitutionally enforcing § 212(c). Thus, at most, the Petitioner has evidence of a past, but not present or ongoing constitutional violation. As such, the Court concludes that the Petitioner has failed to identify a grave constitutional error or fundamental miscarriage of justice as to this equal protection claim. To allow the Petitioner to pursue a § 212(c) waiver would violate the clear intent of Congress to bar such waivers to those aliens who are statutorily ineligible by committing certain crimes. *See Vargas*, 966 F.Supp. at 1547–48; *but see Jurado–Gutierrez v. Greene*, 977 F.Supp.

1089, 1094–95 (D.Colo.1997). Accordingly, the Petitioner is not entitled to habeas relief as to this claim.

### III. SUMMARY

For the foregoing reasons, the Court concludes that the Petitioner's Petition for a Writ of Habeas Corpus and Request to Stay Deportation [Doc. No. 1] are DENIED. Because this Order resolves this petition, the clerk is directed to enter judgment in favor of the Defendants and close this case.