**Manual JURADO–GUTIERREZ, Petitioner,**

**v.**

**Joseph GREENE, District Director, Immigration and Naturalization Service, Executive Office for Immigration Review, and John Doe, Respondents.**

No. 97–Z–1756.

United States District Court, D. Colorado.

Sept. 29, 1997.

Sandra Saltrese–Miller, Boulder, CO, Jim Salvator, Lafayette, CO, for Petitioner.

Michael E. Hegarty, Asst. U.S. Atty., Denver, CO, Weldon S. Caldbeck, of Counsel, Asst. Dist. Counsel I.N.S., Denver, CO, for Respondents.

## MEMORANDUM OPINION AND ORDER

WEINSHIENK, District Judge.

The matter before the Court is the Complaint For Petition For Writ Of Habeas Corpus (With Stay Of Deportation), filed August 12, 1997. Petitioner is a thirty-one year old native and citizen of Mexico. He has been a lawful permanent resident of the United States since 1988. On December 11, 1995, petitioner pled guilty in state court to possession with intent to distribute a controlled substance (cocaine), and was sentenced to four years at Adams County Community Corrections. Under the Immigration and Nationality Act (INA), as amended, petitioner's state law conviction made him deportable. *See* 8 U.S.C. § 1251(a)(2)(B)(i). At the time petitioner pled guilty, § 212(c) of the INA gave petitioner the right to a discretionary hearing before an Immigration Judge, at which he could apply for a waiver of deportation. *See* INA § 212(c) (codified at 8 U.S.C. § 1182(c)).

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 440(d) of AEDPA amended § 212(c) and eliminated discretionary hearings for aliens convicted of most drug crimes, including petitioner's. On September 9, 1996, the Immigration and Naturalization Service (INS) initiated deportation proceedings against petitioner. On December 19, 1996, petitioner's application for discretionary relief under § 212(c) was denied by an Immigration Judge, and his appeal was dismissed on July 24, 1997, by the Board of Immigration Appeals (BIA). Citing AEDPA § 440(d), the BIA ruled that petitioner was statutorily ineligible for discretionary relief under § 212(c).

In his Complaint, petitioner asserted that § 440(d), as applied to him, was unconstitutionally retroactive, arguing that eliminating his right to a discretionary hearing after he pled guilty to a deportable offense unjustly disrupted his settled expectations. Petitioner also argued that § 440(d) violated his due process right to a hearing prior to deportation. At a September 3, 1997 hearing, the Court denied petitioner's Complaint on these two grounds. Application of AEDPA § 440(d) to petitioner was not unconstitutionally retroactive. *See Landgraf v. USI Film Products,* 511 U.S. 244, 274, 114 S.Ct. 1483, 1501, 128 L.Ed.2d 229, 258 (1994) ("We have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not

jurisdiction lay when the underlying conduct occurred."); *Castilleja v. INS*, 1997 WL 446641 (10th Cir. July 28, 1997) (unpublished opinion); *Fernandez v. INS*, 113 F.3d 1151, 1153 (10th Cir.1997).

Furthermore, petitioner has no due process right to a § 212(c) discretionary hearing prior to deportation. *See Kolster v. INS*, 101 F.3d 785, 789 (1st Cir.1996) ("Aliens do not have a cognizable reliance interest in the availability of discretionary 212(c) relief."); *Bassett v. INS*, 581 F.2d 1385, 1386 (10th Cir.1978) ("Although certain due process rights are extended to alien residents, ... the right to stay in the country is not protected.").

At oral argument, counsel for petitioner alleged a violation of the equal protection principle in the Fifth Amendment to the United States Constitution, which the Court now decides.

As a threshold issue, the Court must decide whether, in view of AEDPA § 440(a) and the recently enacted Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), jurisdiction exists to hear this habeas corpus petition. The INA, as amended by AEDPA and IIRIRA, states: "[N]otwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this-Act." IIRIRA § 306(a) (codified at 8 U.S.C. § 1252(g)).

However, the statute does not mention habeas relief for constitutional violations. Thus, despite the statute's sweeping language, the question remains whether the federal district courts still have statutory jurisdiction under 28 U.S.C. § 2241, or constitutional jurisdiction under the Suspension Clause, to review alleged constitutional violations. *See* U.S. Constit. art. I, § 9, cl. 2

("The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."); *Webster v. Doe*, 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988) ("[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear."); *Yang v. INS*, 109 F.3d 1185, 1196 (7th Cir.1997) (stating that IIRIRA § 306(a) abolishes review under § 2241, but leaves constitutional habeas review intact); *Fernandez*, 113 F.3d at 1154–1155 (discussing, but expressing no opinion on, whether judicial review remains under either § 2241 or the Constitution's Suspension Clause). Indeed, in *Fernandez*, the government conceded that habeas review remains for "substantial" constitutional violations. *Id.* at 1156.

■ The Court is satisfied that petitioner's equal protection claim alleges a colorable, substantial constitutional violation.[1] At least six federal district courts have addressed this issue and held that jurisdiction remains to hear habeas petitions for alleged substantial constitutional violations. *See Mojica v. Reno*, 970 F.Supp. 130, 155–61 (E.D.N.Y. 1997); *Ozoanya v. Reno*, 968 F.Supp. 1, 5–6 (D.D.C.1997); *Yesil v. Reno*, 958 F.Supp. 828, 837–39 (S.D.N.Y.1997) *Veliz v. Caplinger*, 1997 WL 61456, *2 (E.D.La. Feb.12, 1997); *Powell v. Jennifer*, 937 F.Supp. 1245, 1252–53 (E.D.Mich.1996); *Dunkley v. Perryman*, 1996 WL 464191, *2–3 (N.D.Ill. Aug.9, 1996). Therefore, this Court has jurisdiction, either under 28 U.S.C. § 2241 or the Constitution, to adjudicate this claim. *See Webster*, 486 U.S. at 603, 108 S.Ct. at 2053 ("[S]erious constitutional questions ... would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim."); *Czerkies v. U.S. Dept. of Labor*, 73 F.3d 1435, 1438–39 (7th Cir.1996) (cited with approval in *Fernandez*, 113 F.3d at 1155) (Jurisdiction-precluding statutes "do not, un-

---

1. Neither party contests that the Equal Protection clause of the Fourteenth Amendment, as embodied in the Fifth Amendment and applied to the INS, protects legal aliens. *See Plyler v. Doe*, 457 U.S. 202, 211–212, 102 S.Ct. 2382, 2391–2392, 72 L.Ed.2d 786 (1982) (aliens protected by Equal Protection Clause); *Johnson v. Robison*,

415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 1164 n. 4, 39 L.Ed.2d 389 (1974) ("[I]f a classification would be invalid under the Equal Protection Clause of the Fourteenth Amendment, it is also inconsistent with the due process requirement of the Fifth Amendment.").

less Congress expressly provides, close the door to constitutional claims, provided that the claim is colorable. . . .").

Petitioner's equal protection claim relies on a distinction in the INA that sets forth two categories of aliens that are not permitted to live in the United States: deportable aliens and excludable aliens. *See Landon v. Plasencia*, 459 U.S. 21, 25–26, 103 S.Ct. 321, 325–26, 74 L.Ed.2d 21 (1982) (noting the differences between deportation and exclusion proceedings). Deportable aliens, defined in 8 U.S.C. § 1251(a), are those that reside within the United States but whom may be deported for various reasons, including commission of certain crimes. Excludable aliens, defined in 8 U.S.C. § 1182(a), are those who may be denied entrance into the United States for various reasons. Within the "excludable aliens" section, Congress enacted INA § 212(c), which provides that excludable aliens who were legal permanent residents for seven years, and proceeded abroad only temporarily, may be admitted at the discretion of the Attorney General.[2] 8 U.S.C. § 1182(c). In short, Congress identified a subset of excludable aliens, those who were legal permanent residents for seven years and left the country only temporarily, and provided them with a discretionary hearing prior to being removed from the United States. On its face, § 212 discretionary relief applied only to exclusion proceedings, and not aliens in deportation proceedings.[3] See 8 U.S.C. § 1251.

This discrepancy did not go unnoticed. In 1976, the Court of Appeals for the Second Circuit held that in order to satisfy equal protection requirements, § 212(c) discretionary relief must be available for aliens that were legal permanent residents for seven years, regardless of whether they are in *deportation* proceedings (*i.e.*, never left the

United States) or *exclusion* proceedings (*i.e.*, left the United States only temporarily) *Francis v. INS*, 532 F.2d 268, 269 (2d Cir. 1976). Prior to *Francis*, a legal permanent resident of seven years who was convicted of a narcotics offense, and who happened to take a trip outside the United States, was entitled to a discretionary hearing before being removed. In contrast, the same alien who did not take a trip outside the United States was not entitled to a hearing. *See, e.g., Matter of Arias–Uribe*, 13 I. & N. Dec. 696, 1971 WL 24403 (BIA 1971). Applying the "minimal scrutiny" test, *Francis* held that this distinction was arbitrary and "wholly unrelated to any legitimate governmental interest." *Francis*, 532 F.2d at 273. Accordingly, *Francis* required that § 212 discretionary relief be afforded to legal permanent aliens living in the United States for seven years, regardless of whether they left the United States temporarily. *Id.*

The rule in *Francis* has been implemented by the BIA and universally accepted by the courts of appeals, including the Tenth Circuit. *See In re Silva*, 16 I. & N. Dec. 26, 1976 WL 32326 (BIA 1976); *Vissian v. INS*, 548 F.2d 325, 328 n. 3 (10th Cir.1977). Significantly, Congress never made § 212(c) discretionary relief available to legal permanent aliens in deportation proceedings. Rather, § 212(c) discretionary relief was extended to aliens in deportation proceedings by case law in order to comply with the equal protection principle in the Fifth Amendment.

Effective April 24, 1996, § 440(d) of AEDPA amended § 212(c) and expressly eliminated discretionary relief for legal permanent aliens who were convicted of certain crimes, including the crime committed by petitioner. A plain reading of AEDPA § 440(d) was that Congress intended to eliminate discretionary

---

**2.** INA § 212(c) states: "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section." 8 U.S.C. § 1182(c). In practice, the INS provides a hearing for these aliens before an Immigration Judge, where the alien is permitted to raise and argue

various humanitarian and hardship factors. *See, e.g., Matter of Mirin*, 16 Int. Dec. 5131 (BIA 1978).

**3.** Congress did provide a similar discretionary hearing for deportable aliens convicted of a crime who had lived in the United States for *ten* consecutive years. 8 U.S.C. § 1254(a)(2). Here, petitioner was a legal resident in the United States since 1988, so this provision does not apply.

relief for excludable aliens, since § 440(d) amended the section of INA that addressed and defined excludable aliens. *See* INA § 212(c) (codified at 8 U.S.C. § 1182(c)). As explained above, deportable aliens were judicially extended § 212(c) discretionary relief by *Francis* and the courts that followed. Thus, in enacting AEDPA § 440(d), Congress curtailed the only grant of discretionary relief that it ever provided. To satisfy the express intent of Congress and the equal protection requirements under *Francis*, the proper interpretation and effect of AEDPA § 440(d) would have been to remove discretionary hearings for both deportable and excludable aliens convicted of drug crimes.

However, the amendment itself uses the word "deportable." [4] By focusing on the word "deportable," and overlooking the fact that this section concerned excludable aliens, the BIA interpreted AEDPA § 440(d) to apply *only* to deportable aliens. *See In re Fuentes–Campos*, Int. Dec. (BIA) 3318, 1997 WL 269368 (May 14, 1997). This interpretation has resulted in an anomalous practice by the INS: § 212(c) discretionary relief was eliminated for aliens in deportation proceedings, but remained available for legal permanent aliens in exclusion proceedings. In short, the BIA's interpretation of AEDPA § 440(d) was not only constitutionally suspect under *Francis*, but also erroneous as a matter of statutory interpretation. *See Vargas v. Reno*, 966 F.Supp. 1537, 1545 (S.D.Cal. 1997) (criticizing the *Fuentes–Campos*, decision as absurd and ironic).

■ Petitioner argues that, pursuant to the BIA decision in *Fuentes–Campos*, the INS practice of allowing § 212(c) relief for excludable, but not deportable, aliens violated his equal protection rights. Petitioner concedes that the equal protection analysis must proceed under the minimal "rational basis" test, but argues that under *Francis* no rational basis exists for treating legal permanent aliens who temporarily leave the country differently from otherwise similarly situated aliens who do not. The only cited opinion on point is *Vargas v. Reno*, 966 F.Supp. 1537 (S.D.Cal.1997), which squarely supports petitioner's position. Relying on *Francis*, the court in *Vargas* held that the BIA's construction of § 440(d) in *Fuentes–Campos* violated the equal protection clause, when applied to aliens such as petitioner who were in deportation proceedings. *See id.* at 1546–47 ("[T]he BIA's decision in *Fuentes—Campos* again draws an arbitrary distinction between [legal permanent resident] aliens who have left the U.S. briefly and those who have always remained here.").

In view of *Francis* and *Vargas*, there appears to be no rational basis for applying the distinction made by the BIA. If petitioner had left the country for a visit to Mexico, under *Fuentes–Campos* he would have been entitled to a § 212(c) discretionary hearing. Simply because he did not leave the country, he was placed in deportation proceedings and denied a § 212(c) hearing.[5] The Court agrees with petitioner and *Vargas* that, under *Francis*, the BIA's interpretation and implementation of AEDPA § 440(d), as set forth in *Fuentes–Campos*, violated the equal protection dictate of the Fifth Amendment.

The burden is on petitioner to show that his equal protection rights in particular were violated. After sorting through the interplay of the relevant statutes and decisions in this matter, it appears that the time period of equal protection violation is narrow. AEDPA § 440(d) was effective April 24, 1996, but petitioner has failed to show any disparate treatment of the two classifications of aliens until the *Fuentes–Campos* decision on May 14, 1997. Indeed, the *Vargas* court stated

---

4. AEDPA § 440(d) added a sentence to § 212(c) as follows: "This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered [herein]...."

5. Respondent argues that the INS had discretion to place returning legal aliens in deportation, rather than exclusion, proceedings if they were gone an "insignificant" length of time. This argument is misplaced, since the INS cannot

cure this constitutional defect by simply changing the label of the proceeding. By statute, § 212(c) relief for excludable aliens was restricted to seven-year permanent residents who left the country only *temporarily*. The fact remains that petitioner's application for a hearing was denied, while a similarly situated alien such as the applicant in *Fuentes–Campos* was granted a hearing.

that, "[a]t first, Immigration Judges applied [AEDPA § 440(d) ] to bar both groups of aliens from seeking deportation waivers." *Vargas*, 966 F.Supp. at 1545. Thus, it appears that the INS began its practice of unconstitutionally granting hearings to aliens in exclusion proceedings on May 14, 1997.

In addition, on April 1, 1997, IIRIRA became effective for all new applications filed after that date. Deportation proceedings pending as of April 1, 1997, were not affected by these provisions of IIRIRA. *See* IIRIRA § 309(c)(1). Section 212(c), as amended by AEDPA § 440(d), was repealed by IIRIRA § 304(b). IIRIRA § 304(a)(7) consolidated deportation and exclusion proceedings into a single category of "removal" proceedings, eliminating the distinction that previously implicated equal protection concerns. Thus, there is no on-going equal protection violation, since IIRIRA remedied this problem for all new proceedings initiated after April 1, 1997. However, like the applicant in *Fuentes–Campos*, petitioner's deportation proceeding was still pending on April 1, 1997, so it was not affected by IIRIRA.

In short, petitioner's equal protection rights were violated only if another application for § 212 relief was granted when petitioner's was denied. From April 24, 1996, when AEDPA became effective, to May 24, 1997, the date of the *Fuentes–Campos* decision, petitioner has not shown that any other applicants were granted § 212(c) relief. On May 14, 1997, however, the BIA in *Fuentes–Campos* granted a § 212(c) hearing to a legal alien simply because he was returning to the United States. *See Fuentes–Campos*, Int. Dec. 3318, 1997 WL 269368 (BIA, May 14, 1997). Therefore, as a practical matter, it appears that a violation could occur only for applications that were still pending as of April 1, 1997, thereby excluding the effect of IIRIRA, and decided by the BIA after the May 14, 1997, *Fuentes–Campos* decision. Petitioner falls within this category. By granting Mr. Fuentes–Campos' application for a § 212(c) discretionary hearing on May 14, 1997, the BIA violated the equal protection rights of petitioner when it denied his application on July 24, 1997.

■ Having found that the BIA's interpretation of § 440(d) violated petitioner's equal protection rights, the question remains how to remedy this situation. Because petitioner has no due process right to a discretionary hearing prior to deportation, there would be no constitutional problem with removing § 212(c) discretionary relief for both categories of aliens. *See Kolster*, 101 F.3d at 789. Ideally, this would be the preferred remedy since it would satisfy the Constitution and comport with the intent of Congress. Unfortunately, any § 212(c) hearings that were unconstitutionally conferred by the BIA have already been given. As a practical matter, the Court cannot retroactively undo such hearings, and attempting to do so would unreasonably disrupt settled expectations.

■ In *Vargas*, the court found that the BIA decision in *Fuentes–Campos* violated the equal protection clause, but essentially denied petitioner a remedy. The court stated that it "cannot grant him a waiver of deportation in contravention of the clear language of the statute.... Plaintiff must seek relief from Congress, possibly in the form of a private bill, rather than the courts." *Vargas*, 966 F.Supp. at 1549. This Court disagrees. The federal district courts have broad, equitable powers to remedy violations of constitutional rights. *See Swann v. Charlotte–Mecklenburg Board of Education*, 402 U.S. 1, 31, 91 S.Ct. 1267, 1283, 28 L.Ed.2d 554 (1971); *Brown v. Board of Education*, 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955). A statute cannot stand in the way of remedying a constitutional violation, especially where the unconstitutional application of the statute itself created the violation.

By erroneously interpreting AEDPA § 440(d) to apply only to aliens in deportation proceedings, and by allowing discretionary hearings for aliens in exclusion proceedings, the BIA has violated the equal protection rights of petitioner. After the *Fuentes–Campos* decision on May 14, 1997, at least one similarly situated alien in an exclusion proceeding was given a discretionary hearing, while petitioner was not. Although the preferred remedy would be to remove the benefit from both categories of aliens the benefit in this instance has al-

ready been irrevocably conferred. In order to remedy the violation of petitioner's equal protection rights, the Court will allow petitioner a discretionary hearing pursuant to the old INA § 212(c). The Court, by this ruling, expresses no opinion on the merits of petitioner's application for discretionary relief. Accordingly, it is

ORDERED that petitioner's Complaint For Petition For Writ Of Habeas Corpus (With Stay Of Deportation) is granted. It is

FURTHER ORDERED that petitioner's order of deportation is vacated. It is

FURTHER ORDERED that respondents shall resume petitioner's deportation proceeding to adjudicate his application for waiver of deportation pursuant to § 212(c) of the INA, without regard to the effect of AEDPA and IIRIRA, in accordance with this Memorandum Opinion And Order. It is

FURTHER ORDERED that the Court's stay of deportation is continued, and will be vacated when petitioner receives his § 212(c) hearing, It is

FURTHER ORDERED that petitioner shall file a status report by December 1, 1997, or when petitioner has received his § 212(c) hearing, which first occurs.