**Jose Manuel GUTIERREZ–PEREZ Petitioner,**

v.

**Adele FASANO, District Director, District 39, U.S. Immigration and Naturalization Service Respondent.**

**No. 98–1865–IEG (RBB).**

United States District Court,
S.D. California.

Jan. 19, 1999.

Murray Hilts, Law Offices of Murray D. Hilts, San Diego, CA, for plaintiff.

U.S. Attorney, CV, U.S. Attorney's Office, Civil Division, San Diego, CA, for defendant.

## ORDER GRANTING PETITIONER'S REQUEST FOR RELIEF UNDER 28 U.S.C. § 2241 [Doc. No. 1]

GONZALEZ, District Judge.

### BACKGROUND

Petitioner Jose Manuel Gutierrez–Perez is a Mexican citizen who became a lawful permanent resident of the United States in the early 1990s.[1] In August 1993, petitioner was convicted of conspiracy to manufacture methamphetamine in violation of California Penal Code § 182(1). The Immigration and Naturalization Service ("INS") commenced deportation proceedings against him on February 5, 1996. Shortly thereafter, petitioner applied for discretionary relief from deportation under section 212(c) of the Immigration and Nationality Act ("INA").[2] On April 26, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which, among other things, made deportable aliens convicted of certain offenses ineligible for section 212(c) relief. On November 26, 1996, an immigration court judge denied petitioner's request for discretionary relief and ordered him deported. The Board of Immigration Appeals ("BIA") denied his appeal on September 15, 1998, finding him "statutorily ineligible" for section 212(c) relief because

---

1. The parties disagree over the specific date on which petitioner became a lawful permanent resident. Petitioner asserts that it was on December 1, 1990 and respondent contends that it was in August 1993. The disagreement does not affect the merits of this Order.

2. . As discussed *infra,* the parties cite different dates for when petitioner applied for discretionary relief: petitioner states that he applied on September 30, 1996, and respondent states that it was on March 15, 1996.

of AEDPA. (Return, Ex. at 2 (09/15/98 *Decision of BIA* ).)

On October 14, 1998, petitioner filed the instant "Complaint for Declaratory and Injunctive Relief and Petition for Writ of Habeas Corpus (with Stay of Injunction)." The Court construed petitioner's "complaint" as a petition for a writ of habeas corpus under 28 U.S.C. § 2241 and issued an Order on October 18, 1998 requiring respondent to show cause why the petition should not be granted. Additionally, the Court stayed petitioner's deportation pending resolution of his petition. Respondent filed a return on November 4, 1998.

## DISCUSSION

Petitioner argues that the denial of his application for section 212(c) relief violated his Fifth Amendment equal protection and due process rights.[3]

### A. Applicable Law

#### 1. Discretionary Relief from Deportation

The INA makes several types of aliens "deportable." *See generally* 8 U.S.C. § 1227. Here, the Immigration Judge found that petitioner was deportable because he had been convicted of an aggravated felony: *See* (Return, Ex. at 5 (11/26/96 *Order of Immigration Judge* ) ("*IJ Opinion* ")); *see also* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is con-

victed of an aggravated felony at any time after admission is deportable.").

At the time the INS commenced deportation proceedings against petitioner, he was eligible for discretionary relief from deportation under section 212(c) of the INA. *See* 8 U.S.C. § 1182(c) (1994) (allowing section 212(c) relief). On April 26, 1996, however, AEDPA was enacted. *See* Pub.L. No. 104–132, 110 Stat. 1214 (1996). Section 440(d) of AEDPA categorically barred aliens convicted of certain crimes, including petitioner's, from obtaining section 212(c) relief.[4] *Id.* at § 440(d), 110 Stat. at 1277.

Shortly thereafter, the BIA addressed the question of whether section 440(d) applied to persons whose section 212(c) applications were pending when AEDPA was enacted. In *In re Soriano*, the BIA determined that Congress did not intend section 440(d) to apply to aliens whose section 212(c) applications were pending at the time of its enactment. Interim Decision (BIA) 3289, 1996 WL 426888 (June 27, 1996) ("*Soriano I* "). The Attorney General subsequently overturned this opinion, holding "that the amendment to INA § 212(c) made by AEDPA § 440(d) applies to proceedings such as Respondent's, in which an application for relief under section 212(c) was pending when AEDPA was signed into law." *In re Soriano*, Interim Decision 3289 (Feb. 21, 1997 A.G.) ("*Soriano II* ").

**3.** Petitioner also makes claims based on his Fourteenth Amendment equal protection and due process rights. The Fourteenth Amendment only prevents "any *State* [from] depriv[ing] any person of life, liberty, or property, without due process of law" or from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1 (emphasis added). Because he is challenging action by the *federal* government, petitioner can only rely on the Fifth Amendment's equal protection and due process protections. *See id.* amend. V; *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 224, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) ("Equal protection analysis in the Fifth Amendment area is the same as that

under the Fourteenth Amendment" (alteration in original) (quoting *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976))).

**4.** Under the BIA's reading of section 440(d), it does not restrict the rights of excludable aliens to obtain section 212(c) relief. *See In re Fuentes–Campos*, Interim Decision (BIA) 3318 (May 14, 1997) (en banc).

A deportable alien is an alien presently in the United States who may be deported at any time. An excludable alien is someone seeking to enter the United States, who may be excluded from entry. A deportable alien can become excludable by leaving the United States and attempting to reenter.

## 2. Review of Deportation Orders

Prior to AEDPA, the courts of appeal had jurisdiction to review final deportation orders. AEDPA removed this jurisdiction. *See Duldulao v. INS*, 90 F.3d 396, 399 (9th Cir.1996) ("AEDPA section 440(a), which affects the power of the court rather than the rights and obligations of the parties, thus revokes our jurisdiction to review Duldulao's final order of deportation.").

After AEDPA was enacted, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). *See* Pub.L. No. 104–208, 110 Stat. 3009, 3009–546 (1996). Petitioner's deportation order is governed by the "transitional rules" of IIRIRA, as his deportation proceedings were initiated in February 1996 and the BIA denied petitioner's request for discretionary relief on September 15, 1998. *See Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997) ("As to cases in which a final deportation or exclusion order was filed after October 30, 1996, and which were pending before April 1, 1997, IIRIRA's transitional rules apply. IIRIRA's permanent provisions pertain to removal proceedings initiated by the INS on or after April 1, 1997."); *id.* at 1150 n. 4 ("Pursuant to 8 C.F.R. § 241.31, a deportation order becomes final 'upon dismissal of an appeal by the Board of Immigration Appeals ...' "). Under these transitional rules, the courts of appeal retain a narrow scope of review over final deportation orders. *See Yang v. INS*, 109 F.3d 1185, 1192 (7th Cir.1997) (finding that the courts of appeal retain jurisdiction over "whether the petitioner is (i) an alien (ii) deportable (iii) by reason of a criminal offense listed in the statute"), *cert. denied, Katsoulis v. INS*, — U.S. ——, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997), *cited in Magana–Pizano v. INS*, 152 F.3d 1213, 1216 (9th Cir.1998). This narrow scope of review does not extend to petitioner's claims here.

Broader review of deportation orders remains available under 28 U.S.C. § 2241. *See Magana–Pizano*, 152 F.3d at 1222 ("[B]ecause the Suspension Clause prevents IIRIRA from foreclosing access to general statutory habeas relief in this case, Magana–Pizano may pursue his remedies under 28 U.S.C. § 2241."). Section 2241 provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). In *Magana–Pizano*, the Ninth Circuit held that section 2241 allowed consideration of claims like those made by petitioner here. 152 F.3d at 1222 ("We reverse ... and remand the case to the district court with instructions to proceed to the merits of the petition."); *id.* at 1215 (noting petitioner's equal protection challenge).

## B. Analysis

Petitioner offers three challenges to the BIA's finding that he was ineligible for section 212(c) relief. He contends that the BIA improperly applied section 440(d) retroactively; he argues that section 440(d) was applied to him in a way that violated his equal protection rights; and he argues that AEDPA improperly denies judicial review of deportation proceedings in violation of the Due Process Clause.

### 1. Retroactive Application

Petitioner pleaded guilty to his aggravated felony offense in August 1993. He argues that, when he entered his plea, he "relied on the law that was in place at the time." (Pet. at 12.)

The INS commenced deportation proceedings against petitioner on February 5, 1996, and he applied for section 212(c) relief shortly thereafter. Section 440(d) of AEDPA was enacted on April 24, 1996. The BIA denied petitioner's appeal on September 15, 1998, finding that, under *Soriano II*, section 440(d) denied section 212(c) relief to aggravated felons like petitioner. Petitioner argues that the BIA's decision involved an improper retroactive application of section 440(d).

The Supreme Court announced general retroactivity principles in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The Court

first noted the concerns that are raised when a legislative change in law is applied to pending cases. *Id.* at 266, 114 S.Ct. 1483 ("The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. Its responsively to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals."). The Court then noted the conflicting presumptions involved in determining whether a new law should be applied in pending cases: on the one hand, the presumption against retroactive application requires "Congress [to] first make its intention [to retroactively apply a statute] clear," *id.* at 268, 114 S.Ct. 1483; on the other hand, "a court should 'apply the law in effect at the time it renders its decision,' even though that law was enacted after the events that gave rise to the suit," *id.* at 273, 114 S.Ct. 1483 (*quoting Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974)). The Court articulated a specific analytical test for reconciling these conflicting presumptions:

> [T]he court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280, 114 S.Ct. 1483.

Although the Attorney General has found section 440(d) applicable to "§ 212(c) cases pending ... on the effective date of

AEDPA," *Soriano II,* Interim Decision 3289, two courts of appeal and several district courts have disagreed with this interpretation. *See Henderson v. INS,* 157 F.3d 106, 129 (2d Cir.1998) ("[W]hen § 440(d) is read in conjunction with the rest of the AEDPA and with the legislative history of that statute, there is abundant direct evidence that the section was not intended to apply retroactively."); *Goncalves v. Reno,* 144 F.3d 110, 133 (1st Cir.1998) (same); *Perez v. Reno,* 18 F.Supp.2d 674, 682 (W.D.Tex.1998) (same); *Lee v. Reno,* 15 F.Supp.2d 26, 44–46 (D.D.C.1998) (same); *Pak v. Reno,* 8 F.Supp.2d 1001, 1008 (N.D.Ohio 1998) (same). *But see LaGuerre v. Reno,* 164 F.3d 1035, 1037 (7th Cir.1998) (suggesting, in dicta, that section 440(d) should apply to pending section 212(c) applications); *Jurado–Gutierrez v. Greene,* 977 F.Supp. 1089, 1090 (D.Colo.1997) ("Application of AEDPA § 440(d) to petitioner was not unconstitutionally retroactive."); *Vargas v. Reno,* 966 F.Supp. 1537, 1544 (S.D.Cal.1997) (finding that the application of AEDPA to a deportable alien who had already been granted section 212(c) relief by an immigration judge was not a retroactive application of the law and was therefore permissible). The opinion in *Goncalves* is well-reasoned and accordingly is frequently cited in support of the proposition that section 440(d) should not be retroactively applied. *See, e.g., Perez,* 18 F.Supp.2d at 682 ("Because the First Circuit dealt with the issue meticulously, completely and, in the Court's opinion, correctly, it is not necessary to repeat the First Circuit's analysis. It is sufficient to state that the Court is in concurrence with the First Circuit's ruling that AEDPA § 440(d) ... should not apply retroactively here.").

Applying the *Landgraf* analysis, the *Goncalves* court found that "[t]he Attorney General's application of the new AEDPA restrictions takes away a form of relief that, while discretionary, is plainly substantive, and so implicates *Landgraf's* presumption against retroactivity."[5] *Id.* at

---

**5.** Respondent argues, citing *Landgraf,* that
"there is a presumption that jurisdiction-lim-

128. These "clearly raise[d] retroactivity concerns[ ] require[d] a close examination of AEDPA's text to determine whether Congress ha[d] expressly chosen to make its restrictions retroactive." *Id.* The First Circuit then found that the entire text of AEDPA, together with its legislative history, "demonstrates that Congress did not intend AEDPA § 440(d) to apply retroactively to pending applications for § 212(c) relief."[6] *Id.* at 133.

■ This Court finds the *Goncalves* analysis persuasive. The Court agrees with the First Circuit that the presence of other provisions in AEDPA that contain clear statements that they are to be retroactively applied indicates that section 440(d), which lacks such a clear statement, was not intended to be retroactively applied. *See* 144 F.3d at 128–29 (citing AEDPA sections 413 and 421, governing alien terrorists and asylum applications respectively, as containing clear statements of retroactive application). "If Congress thought that such restrictions would as a matter of course be applied to pending cases, ... then [these clear statements] would have accomplished nothing." *Id.* at 129.

---

iting statutes apply to pending cases." (Return at 5.) This argument was rejected in *Goncalves,* which stated that *"Landgraf* makes clear that the '[a]pplication of a new jurisdictional rule usually takes away no substantive right but simply changes the tribunal that is to hear the case.' " 144 F.3d at 128 & n. 21 (reviewing the history of section 212(c) relief and stating that discretionary relief "is plainly substantive") (quoting *Landgraf,* 511 U.S. at 274, 114 S.Ct. 1483).

*Chew Heong v. United States,* 112 U.S. 536, 5 S.Ct. 255, 28 L.Ed. 770, (1884), *cited with approval by Landgraf,* 511 U.S. at 270, 114 S.Ct. 1483, is analogous to this case in terms of the rights at stake. In *Chew Heong,* the Supreme Court was faced with a statute which provided that resident aliens who left the country could only reenter if they had obtained a particular certificate prior to their departure. 112 U.S. at 539. The issue before the Court was whether the statute should be applied to aliens who had left the country before the statute was passed and who would thus be unable to obtain the certificate and reenter if the statute was applied to them. *See id.* The Court noted several reasons for declining to read the law this way, including "that the courts uniformly refuse to give to statutes a retrospective operation, whereby rights previously vested are injuriously affected, unless compelled to do so by language so clear and positive as to leave no room to doubt that such was the intention of the legislature." *Id.* at 559, 5 S.Ct. 255.

The legislative change effected in *Chew Heong* was merely the imposition of a regulatory restriction that did not change the right of certain aliens to be in the United States but instead only changed the means by which they could enter the United States, whereas here the change actually did alter the right of certain aliens to obtain relief allowing them to remain in the United States. Nevertheless, the *Chew Heong* Court's finding that the aliens had "vested rights" in the previous regulatory scheme suggests that petitioner would have the same vested rights here.

6. In making this finding, the Court also determined that it did not need to defer to the Attorney General's contrary interpretation of section 440(d). The First Circuit relied on *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), which governs "[w]hen a court reviews an agency's construction of the statute which it administers" and which determines the appropriate level of deference owed to agency interpretation. *Id.* at 842, 104 S.Ct. 2778. *Chevron* mandates a two-step analysis by a reviewing court:

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. 2778 (footnotes omitted). Based on its analysis of the statute, the Court found that the congressional intent to not apply section 440(d) retroactively was clear and that the court therefore did not owe any deference to the Attorney General's interpretation of it. 144 F.3d at 127.

Additionally, the legislative history discussed in *Goncalves* indicates that Congress did not intend section 440(d) to apply retroactively. *See id.* at 131–33. Most persuasive is the fact that although the Senate version of section 440(d) specifically included a clear statement of retroactive application, this statement was removed by the conference committee. *See id.* at 131–32.

Although the Court agrees with the *Goncalves* holding, it is not clear from the parties' pleadings that it directly applies here. The *Goncalves* holding was limited to cases involving "pending applications for § 212(c) relief." *Id.* at 133. The pleadings reflect a disagreement over whether petitioner's application was pending when section 440(d) was enacted on April 24, 1996. Respondent contends that petitioner "filed his application for Section 212(c) relief with the immigration court" on March 15, 1996. (Return at 3.) Petitioner states that "respondent [sic] filed an application for 212(c) waiver" on September 30, 1996.

In light of the fact that petitioner's Notice of Appeal to the BIA asserted that "[r]espondent filed his I–191 application prior to the effective date of AEDPA and is therefore entitled to relief under the *Soriano* rationale," (Return, Ex. at 3), and in light of the fact that the Immigration Judge's opinion seems to state that petitioner's application for section 212(c) was pending at the time AEDPA was passed, (*see IJ Opinion* at 7 ("[I]t has been decided that the provision of section 240(d) [sic] of the Act applied to all pending applications and that because respondent's application is now pending, his request for a waiver pursuant to Section 212(c) of the Act will be denied."); *see also* Return at 3 (citing the *IJ Opinion* in support of the

contention that petitioner filed his application on March 15, 1996)), the Court adopts respondent's date for when the section 212(c) application was filed.[7] Accordingly, the *Goncalves* holding directly applies.

Even if petitioner's section 212(c) application was not pending on the date AEDPA was enacted, the Court finds persuasive other cases holding that the determinative factor is whether the "deportation proceeding was pending on the date of the statute's enactment." *Henderson,* 157 F.3d at 130; *see also Wallace v. Reno,* 24 F.Supp.2d 104, 112 (D.Mass.1998) (holding that AEDPA did not apply to cases where the deportable alien had entered a guilty plea before AEDPA's enactment); *Ranglin v. Reno,* 27 F.Supp.2d 262, 266 (D.Mass.1998) ("Therefore, this Court concludes that Congress did not intend AEDPA § 440(d) to apply retroactively to permanent resident aliens in deportation proceedings at the time of its enactment."). Accordingly, the Court finds that section 440(d) was improperly retroactively applied.

### 2. Equal Protection Argument

◼ In addition to failing on retroactivity grounds, section 440(d), as applied to petitioner, also fails on equal protection grounds.

The applicable standard for judging whether the AEDPA distinction between excludable and deportable aliens violates petitioner's equal protection rights is the rational basis test: the distinction must rationally relate to a legitimate governmental objective. *See Paointhara v. INS,* 708 F.2d 472, 473 (9th Cir.1983) ("Classifications among aliens satisfy equal protection if supported by a rational basis.");

---

**7.** In light of several typographical and substantive mistakes and omissions made by petitioner's counsel, the Court finds further reason to doubt the accuracy of petitioner's factual contention. For example, petitioner misattributes quotations to cases they do not come from, (*see, e.g.,* Pet. at 6 (misattributing a quote about AEDPA, which was enacted in 1996, to a 1958 case)); *id.* at 7 (misattributing a quotation to *Paointhara v. INS,* 708 F.2d 472 (9th Cir.1983)); he fails to cite cases directly on point; and he supplies dates for other pertinent events that, without explanation, contradict the findings of the Immigration Judge.

*Francis v. INS*, 532 F.2d 268, 272 (2d Cir.1976) ("Under the minimal scrutiny test, which we consider applicable in this [deportation] case, distinctions between different classes of persons must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."). Although this test is usually easily met, under Ninth Circuit precedent the noted distinction fails this test.

Prior to the passage of AEDPA, section 212(c) read:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c) (1994). The text of this pre-AEDPA version of section 212(c) strongly indicates that the exception was only available to excludable aliens. The statute applied to "[a]liens lawfully admitted for permanent residence *who temporarily proceeded abroad voluntarily* " and it allowed them to be *"admitted* in the discretion of the Attorney General." *Id.* (emphasis added). Additionally, the subsection appeared in a statute entitled "[e]xcludable aliens." *Id.* § 1182.

In spite of this clear language, however, the Ninth Circuit and other courts of appeal construed section 212(c) as also affording relief to deportable aliens. *See*

*Tapia–Acuna v. INS*, 640 F.2d 223, 225 (9th Cir.1981) ("Although the literal language of § 1182(c) refers only to the admission of aliens otherwise subject to grounds of exclusion, the provision has long been applied in deportation proceedings as well."); *Francis*, 532 F.2d at 273 ("Fundamental fairness dictates that permanent resident aliens who are in like circumstances, but for irrelevant and fortuitous factors, be treated in a like manner."). These courts found that a contrary reading would abridge equal protection rights by impermissibly distinguishing between similarly-situated aliens. *See Tapia–Acuna*, 640 F.2d at 225 ("We agree with the Second Circuit that § 1182(c), as interpreted in *Arias–Uribe [ v. Immigration and Naturalization Service*, 466 F.2d 1198 (1972)]* and its progeny [to only apply to excludable aliens], creates a distinction that lacks a rational basis." (footnote omitted)); *Francis*, 532 F.2d at 273 (same); *cf. Yeung v. INS*, 76 F.3d 337, 340–41 (11th Cir.1995) (finding that allowing section 212(h) waivers to excludable but not deportable aliens was unconstitutional).

Section 440(d) amended section 212(c) "by striking 'has been convicted of one or more aggravated felonies' and all that follows through the end and inserting 'is deportable by reason of having committed any criminal offense covered in section 241(a)(2) (A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i).' " Pub.L. No. 104–132, § 440(d), 110 Stat. 1214, 1277 (1996). The newly-referenced sections all deal with certain classes of deportable aliens. *See* 8 U.S.C. § 1227 ("Deportable aliens"). Thus, the amendment on its face denies section 212(c) relief to deportable aliens guilty of certain offenses but continues to allow such relief for excludable aliens guilty of the same offenses.

The language added to section 212(c) suffers the same equal protection problems as the original language. These equal protection concerns led the BIA to construe

the pre-AEDPA section 212(c) as affording relief to deportable aliens and to excludable aliens. *See Matter of Silva,* 16 I. & N. Dec. 26, 30 (1976) ("In light of the constitutional requirements of due process and equal protection of the law, it is our position that no distinction shall be made between permanent resident aliens who temporarily proceed abroad and non-departing permanent resident aliens."); *see also Tapia–Acuna,* 640 F.2d at 224–25 ("The BIA has voluntarily adopted the rule announced in *Francis,* except in cases arising in the Ninth Circuit." (citations omitted)). In *Fuentes–Campos,* however, the BIA determined that the section 440(d) modifications to section 212(c) only affected deportable aliens. Interim Decision 3318. This Court cannot agree with this reading of the amendment.

As noted, in *Tapia–Acuna,* the Ninth Circuit held that a statutory distinction affording section 212(c) relief to excludable aliens but denying it to deportable ones lacked a rational relationship to a lawful statutory objective and therefore constituted an equal protection violation. 640 F.2d at 225. This case's holding and reasoning apply equally here: "no purpose would be served by giving less consideration to the alien 'whose ties with this country are so strong that he has never departed after his initial entry' than to the alien 'who may leave and return from time to time.' " [8] *Id.* (quoting *Francis,* 532 F.2d at 273). For this reason, other district courts have found that applying section 440(d) to deportable aliens but not to excludable ones violates equal protection rights. *See Vargas,* 966 F.Supp. at 1547 (finding that the AEDPA modification to section 212(c) created an equal protection violation); *Cruz Walters v. Reno,* 16 F.Supp.2d 166, 170–71 (D.P.R.1998) ("By applying AEDPA § 440(d) to resident aliens who have not left the country while not applying it to similarly-situated resident aliens who have left the country briefly, the BIA engaged in discriminatory enforcement of a facially neutral statute."); *Jurado–Gutierrez,* 977 F.Supp. at 1093 (same).

In spite of the clear Ninth Circuit precedent, respondent offers two lawful purposes that the statute rationally advances. First, respondent argues that "[i]t was entirely rational for Congress to focus on the problem of criminal aliens inside the United States before addressing aliens applying for admission to the United States. The former posed a present danger to

---

**8.** Respondent argues that excludable and deportable aliens are not similarly situated. (*See* Return at 5.) This ignores the aforementioned cases. In *Tapia–Acuna,* the Ninth Circuit agreed with the rationale of the Second Circuit's *Francis* opinion:

> The [Second Circuit] observed that an alien who has been convicted of a drug-related offense, leaves the United States temporarily, and then returns is eligible for § 1182(c) relief, while ... an alien in precisely the same situation except for the fact that he or she has remained in the United States since the conviction would be ineligible under § 1182(c).... We agree with the Second Circuit that § 1182(c) ... creates a distinction that lacks a rational basis.

640 F.2d at 224–25. The court in *Tapia–Acuna* thus specifically found that deportable aliens were similarly situated to excludable aliens in the discretionary relief context.

The cases cited by respondent in support of his contention that "[t]he courts have repeatedly recognized that Congress has prescribed different standards and procedures for exclusion and deportation proceedings" are factually distinct from the instant case and from *Tapia–Acuna.* Indeed, many of them involve the very different issue of whether excludable aliens are similarly situated, and thus deserve all the same rights as deportable aliens. *See, e.g., Barrera–Echavarria v. Rison,* 44 F.3d 1441, 1448 (9th Cir.1995) ("The Supreme Court has consistently recognized that 'our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.' In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.' " (quoting *Leng May Ma v. Barber,* 357 U.S. 185, 187, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958))) (*cited in* Return at 7). These cases do not apply to the issue of whether deportable aliens have the same right to discretionary relief made available to excludable aliens.

public safety." (Return at 10.) The Court does not agree. Section 212(c), as modified by AEDPA, does not allow relief only to supposedly-dangerous aliens who are safely outside the United States, but rather allows relief to those who are about to reenter the country. The Court sees no reason why an alien on the verge of reentry is any less of a threat to public safety than an alien actually in the country. Additionally, the Court is unpersuaded that Congress might have chosen to focus on one group first before turning its attention to another. Shortly after AEDPA was passed, Congress remedied any potential disparate treatment of deportable aliens by eliminating section 212(c) relief altogether in IIRIRA. *See* Pub.L. No. 104–208, 110 Stat. 3009, 3009–597 (1996) ("Section 212(c) (8 U.S.C. § 1182(c)) is repealed."). Thus, when Congress chose to address excludable and deportable aliens, it was able to do so promptly.

Respondent states that "[i]t may also be argued that Section 440(d) of AEDPA created an incentive for criminal aliens to leave voluntarily and then reveal themselves to the INS at a port of entry to become eligible for Section 212(c) relief." (*Id.*) It is questionable whether section 440(d) creates this incentive, especially as it can apply to cases where a person is incarcerated and thus cannot leave the country to place himself or herself in the excludable rather than the deportable category. Regardless, this rationale cannot stand in light of Ninth Circuit precedent rejecting the similar excludable/deportable alien distinction in the pre-AEDPA section 212(c) context. *See Tapia–Acuna,* 640 F.2d at 225 (quoting *Francis* for the proposition that "no purpose would be served by giving less consideration to the alien 'whose ties with this country are so strong that he has never departed after his initial entry' than to the alien 'who may leave and return from time to time.' ").

The fact that the Court finds an equal protection violation does not mean that petitioner is entitled to the relief he seeks. Respondent relies on *Vargas* to argue that even if the Court finds section 440(d) was unconstitutionally applied to petitioner, "there is no remedy to afford to Gutierrez." (Return at 12.) In *Vargas,* the court found that section 440(d) was unequally applied to deportable aliens but stated that the remedy "is not to allow aliens who have always resided in the United States to seek § 1182(c) waivers. Rather, the solution would be to apply the § 1182(c) ineligibility for waivers to ... aliens who have left the U.S. briefly and are in exclusion proceedings." 966 F.Supp. at 1547. The court continued to state that because the unequal enforcement was remedied with the passage of IIRIRA, which eliminated section 212(c) relief for both excludable and deportable aliens, the court "would not retroactively overturn these decisions and order these aliens deported." *Id.* at 1548 ("It would violate the clear intent of Congress to grant a waiver to an individual who is statutorily ineligible.... Plaintiff has established a past constitutional violation which has been remedied. Since there is no ongoing constitutional violation, there is nothing for this Court to enjoin.").

While this Court shares the *Vargas* court's concerns about effectuating the congressional intent to deny section 212(c) relief to certain aliens, the Court does not agree that there should be no remedy here. "Although the preferred remedy would be to remove the benefit from both categories of aliens the benefit in this instance has already been irrevocably conferred." *Jurado–Gutierrez,* 977 F.Supp. at 1094–95 (disagreeing with the *Vargas* reasoning). Petitioner suffered from an unequal application of a statute that may be remedied by remanding petitioner's case to the BIA to consider whether § 212(c) relief is merited. *See id.* at 1095 ("In order to remedy the violation of petitioner's equal protection rights, the Court will allow petitioner a discretionary hearing pursuant to the old INA § 212(c)."); *cf. Tapia–Acuna,* 640 F.2d at 225 (finding an equal protection violation in the categorical denial of section 212(c) relief to

deportable aliens and remanding to the BIA for further proceedings); *Francis,* 532 F.2d at 273 (same).

The remedy this Court arrives at does not, as respondent contends, order "an agency to commit an *ultra vires* act," (Return at 13), but rather orders an agency to fulfill a statutory duty in a constitutional manner. In this regard the Court's remedy is no different from that adopted by the earlier cases requiring the INS to allow discretionary relief to deportable aliens because such relief was being allowed to excludable aliens. *Compare Francis,* 532 F.2d at 273 ("The case is remanded to the Board so that the Attorney General's discretion under Section 212(c) may be exercised.") *with INS v. Pangilinan,* 486 U.S. 875, 883, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988) (finding that a court could not confer citizenship on a party without specific statutory authority to do so) (*cited in* Return at 12).

### 3. Judicial Review

The Court rejects petitioner's third argument, that AEDPA impermissibly limits judicial review of deportation orders. (Pet. at 9–11.) Petitioner relies on the Due Process Clause and separation of powers limitations on the ability of Congress to curtail judicial review of deportation proceedings. (*See id.*) As respondent notes, the Court is bound by the Ninth Circuit's decision in *Duldulao,* where the court rejected similar arguments: "Since the Constitution empowers Congress to define lower federal court jurisdiction and formulate policies for the expulsion or exclusion of aliens, section 440(a) does not, as Duldulao argues, 'offend the separation of powers.' Nor does it offend due process." 90 F.3d at 400; *see also Magana–Pizano,* 152 F.3d at 1216 ("Because Magana–Pizano's arguments are not within the narrow scope of this Court's review on direct appeal under IIRIRA's transitional rules, we dismiss his petition for review for lack of jurisdiction.").

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** petitioner's request for relief under 28 U.S.C. § 2241. The Court hereby **ORDERS** that respondent shall resume petitioner's deportation proceeding to adjudicate his application for discretionary relief under section 212(c) (without regard to the effect of AEDPA or IIRIRA on section 212(c)). The Court's stay of deportation is **CONTINUED** until petitioner receives his section 212(c) hearing, at which time the stay will be vacated. The Court by this ruling does not express any opinion on the merits of petitioner's application for discretionary relief.

**IT IS SO ORDERED.**